**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| CLEAN LABEL PROJECT FOUNDATION, | |
| Plaintiff, | |
| v. | Case No. 20-cv-02311-KBJ |
| ROWLAND COFFEE ROASTERS, INC. and THE J. M. SMUCKER COMPANY, | HONORABLE KETANJI BROWN JACKSON |
| Defendants. | |

**THE J. M. SMUCKER COMPANY AND ROWLAND COFFEE ROASTERS, INC.'S**
**MEMORANDUM OF POINTS AND AUTHORITY IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO REMAND**

Ronald Y. Rothstein (*pro hac vice*)
Sean H. Suber (*pro hac vice*)
Nathan R. Gilbert (*pro hac vice*)
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
RRothste@winston.com
SSuber@winston.com
NRGilbert@winston.com

*Counsel for Defendants*
*The J. M. Smucker Company and Rowland Coffee Roasters, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD ............................................................................................................4

ARGUMENT ........................................................................................................................4

    I.    This Case Is Removable Under CAFA ........................................................................4

        A.  The text of CAFA and the CPPA confirm that this case is removable under CAFA......5

        B.  The legislative history of CAFA and the CPPA confirm that this case is removable under CAFA.................................................................................................9

        C.  The D.C. Circuit has said that the decisions of the local D.C. courts are controlling, and the highest D.C. court has held CPPA representative actions must proceed "*within* the Rule 23 framework" and are thus subject to CAFA....................................................10

        D.  Plaintiff provides no evidence to rebut Defendants' evidence that CAFA's numerosity and amount-in-controversy requirements are satisfied................................................16

            1.  Defendants have provided the Court with sufficient evidence to conclude that CAFA's numerosity requirement is satisfied....................................................16

            2.  Defendants provided the Court with sufficient evidence to conclude that CAFA's amount-in-controversy requirement is satisfied................................................17

    II.   This Case Is Also Removable Based on Traditional Diversity Jurisdiction ...................20

        A.  Plaintiff's "common and undivided" claims for injunctive relief are not subject to the non-aggregation principle ........................................................................................21

        B.  Applying the non-aggregation principle would not defeat diversity jurisdiction .........23

        C.  Attorneys' fees and punitive damages also satisfy the amount in controversy ............26

CONCLUSION.......................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*,
    48 F. Supp. 2d 37 (D.D.C. 1999) .................................................................. 22, 23

*Alston v. Whole Foods Mkt. Grp.*,
    2018 WL 2561041 (D.D.C. Apr. 13, 2018) ....................................................... 14

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................................ 3

*Animal Legal Def. Fund v. Hormel Foods Corp.*,
    249 F. Supp. 3d 53 (D.D.C. 2017) ............................................................. *passim*

*Apton v. Volkswagen Grp. of Am., Inc.*,
    233 F. Supp. 3d 4 (D.D.C. 2017) ...................................................................... 4

*Bass v. Rockefeller*,
    331 F. Supp. 945 (S.D.N.Y. 1971), *vacated on other grounds*, 464 F.2d 1300
    (2d Cir. 1971) ................................................................................................ 22, 23

*Bauer v. Marmara*,
    774 F.3d 1026 (D.C. Cir. 2014) ........................................................................ 28

*Beck v. Test Masters Educ. Servs., Inc.*,
    73 F. Supp. 3d 12 (D.D.C. 2014) ..................................................................... 26

*Berman v. Narragansett Racing Ass'n*,
    414 F.2d 311 (1st Cir. 1969) ............................................................................ 23

*Beyond Pesticides v. Dr. Pepper Snapple Grp., Inc.*,
    322 F. Supp. 3d 119 (D.D.C. 2018) ................................................................. 18

*Bradford v. George Washington Univ.*,
    249 F. Supp. 3d 325 (D.D.C. 2017) ............................................................ 17, 26

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    123 F.3d 599 (7th Cir. 1997), *abrogated on other grounds by Rivet v. Regions*
    *Bank of La.*, 522 U.S. 470 (1998) ..................................................................... 24

*Breakman v. AOL LLC*,
    545 F. Supp. 2d 96 (D.D.C. 2008) ............................................................ *passim*

*Breathe DC v. Santa Fe Nat. Tobacco Co.*,
    232 F. Supp. 3d 163 (D.D.C. 2017) ................................................................. 21

*Burns v. Windsor Ins. Co.*,
  31 F.3d 1092 (11th Cir. 1994) ........................................................................ 18

*Byrd v. Jackson*,
  902 A.2d 778 (D.C. 2006) ............................................................................... 27

*Louisiana ex rel. Caldwell v. Allstate Ins. Co.*,
  536 F.3d 418 (5th Cir. 2008), *abrogated on other grounds by Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014) ..................................... 9

*California v. Freeman*,
  488 U.S. 1311 (1989) ...................................................................................... 13

*Camreta v. Greene*,
  563 U.S. 692 (2011) ........................................................................................ 12

*In re Cardizem CD Antitrust Litig.*,
  90 F. Supp. 2d 819 (E.D. Mich. 1999) ...................................................... 22, 23

*Cohn v. Petsmart, Inc.*,
  281 F.3d 837 (9th Cir. 2002) ........................................................................... 18

*Comm. for GI Rights v. Callaway*,
  518 F.2d 466 (D.C. Cir. 1975) ................................................................... 4, 18

*Congress v. D.C.*,
  324 F. Supp. 3d 164 (D.D.C. 2018) ................................................................. 12

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81 (2014) ..................................................................................... 4, 18

*Doe v. Georgetown Synagogue-Kesher Israel Congregation*,
  118 F. Supp. 3d 88 (D.D.C. 2015) ............................................................. 18, 26

*English v. Trump*,
  279 F. Supp. 3d 307 (D.D.C. 2018) ................................................................... 8

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005) ........................................................................................ 24

*Freeman v. Blue Ridge Paper Prods., Inc.*,
  551 F.3d 405 (6th Cir. 2008) ........................................................................... 17

*GEO Specialty Chems., Inc. v. Husisian*,
  951 F. Supp. 2d 32 (D.D.C. 2013) ................................................................... 21

*Gomez v. Wilson*,
  477 F.2d 411 (1973) ................................................................................... 4, 18

*Griffin v. Coastal Int'l Sec., Inc.*,
   2007 WL 1601717 (D.D.C. June 4, 2007) ........................................................................19

*Griffith v. Barnes*,
   560 F. Supp. 2d 29 (D.D.C. 2008) ..................................................................................27

*Guedes v. ATF*,
   356 F. Supp. 3d 109 (D.D.C. 2019) ...................................................................................9

*Hardt v. Reliance Standard Life Ins. Co.*,
   560 U.S. 242 (2010) .........................................................................................................6

*Hoffman v. Vulcan Materials, Co.*,
   19 F. Supp. 2d 475 (M.D.N.C. 1998) ............................................................................23

*Howard v. Pritzker*,
   775 F.3d 430 (D.C. Cir. 2015) ........................................................................................8

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) .......................................................................................................21

*Ill. Nat'l Guard v. FLRA*,
   854 F.2d 1396 (D.C. Cir. 1988) ......................................................................................9

*Inst. for Truth in Mktg. v. Total Health Network Corp.*,
   321 F. Supp. 3d 76 (D.D.C. 2018) ............................................................................20, 21

*J.E.M. Ag Supply, Inc. v. Pioneer Hi–Bred Int'l, Inc.*,
   534 U.S. 124 (2001) .........................................................................................................8

*Katz v. Warner-Lambert Co.*,
   9 F. Supp. 2d 363 (S.D.N.Y. 1998) ...............................................................................24

*King & Spalding, LLP v. United States Dep't of Health & Human Servs.*,
   2020 WL 1695081 (D.D.C. Apr. 7, 2020) ......................................................................1

*Lincoln Prop. Co. v. Roche*,
   546 U.S. 81 (2005) ...........................................................................................................2

*Lovell v. State Farm Mut. Auto. Ins. Co.*,
   466 F.3d 893 (10th Cir. 2006) .......................................................................................24

*McPhail v. Deere & Co.*,
   529 F. 3d 947 (10th Cir. 2008) ......................................................................................18

*In re Microsoft Corp. Antitrust Litig.*,
   127 F. Supp. 2d 702 (D. Md. 2001) ...............................................................................24

*Modern Mgmt. Co. v. Wilson*,
    997 A.2d 37 (D.C. 2010) ............................................................27

*N.J. Welfare Rights Org. v. Cahill*,
    483 F.2d 723 (3d Cir. 1973)........................................................23

*Nat'l Consumers League v. Bimbo Bakeries USA*,
    46 F. Supp. 3d 64 (D.D.C. 2014).............................................. 18, 20

*Nat'l Consumers League v. Flowers Bakeries, LLC.*,
    36 F. Supp. 3d 26 (D.D.C. 2014)..................................................19

*Nat'l Welfare Rights Org. v. Weinberger*,
    377 F. Supp. 861 (D.D.C. 1974)...................................................22

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ..................................................................8

*New Prime Inc. v. Oliveira*,
    139 S. Ct. 532 (2019) .................................................................6

*\*Organic Consumers Ass'n v. General Mills, Inc.*,
    2017 WL 2901210 (D.C. Super. Apr. 27, 2017) ...............................15

*Organic Consumers Ass'n v. Hain Celestial Grp., Inc.*,
    285 F. Supp. 3d 100 (D.D.C. 2018)...............................................25

*Pharmavite, LLC v. Clean Label Project Foundation et al.*,
    2:20-cv-08001, ECF 1 (C.D. Cal. Sept. 1, 2020)............................1, 7

*Pietrangelo v. Refresh Club, Inc.*,
    2019 WL 2357379 (D.D.C. June 4, 2019) .......................................19

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011) ...................................................................8

*Rising-Moore v. Red Roof Inns, Inc.*,
    435 F.3d 813 (7th Cir. 2006)........................................................18

*Ross v. Blake*,
    136 S. Ct. 1850 (2016)................................................................6

*\*Rotunda v. Marriott Int'l, Inc.*,
    123 A.3d 980 (D.C. 2015) ...................................................*passim*

*Schweinfurth v. Motorola, Inc.*,
    2005 WL 2233258 (N.D. Ohio Sept. 9, 2005) ..................................23

*Sloan v. Soul Circus, Inc.*,
  2015 WL 9272838 (D.D.C. Dec. 18, 2015) .................................................................... 17, 26

*Smith v. Washington*,
  593 F.2d 1097 (D.C. Cir. 1978) ...................................................................................... 19, 21

*Snyder v. Harris*,
  394 U.S. 332 (1969) ......................................................................................................... 17, 22, 27

*Song v. Charter Commc'ns Inc.*,
  2017 WL1149286 (S.D. Cal. Mar. 28, 2017) ...................................................................... 5

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
  303 U.S. 283 (1938) ............................................................................................................. 19

*Standard Fire Ins. Co. v. Knowles*,
  568 U.S. 588 (2013) ........................................................................................................... 3, 17

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ........................................................................................... 24, 25

*Tatum v. Laird*,
  444 F.2d 947 (D.C. Cir. 1971), *rev'd on other grounds*, 408 U.S. 1 (1972) .................. 21, 25

*In re U-Haul Int'l, Inc.*,
  2009 WL 902414 (D.C. Cir. Apr. 6, 2009) ....................................................................... 11, 12, 13

*Wexler v. United Air Lines, Inc.*,
  496 F. Supp. 2d 150 (D.D.C. 2007) ....................................................................................... 17

*Williams v. First Gov't Mortg. & Inv'rs Corp.*,
  225 F.3d 738 (D.C. Cir. 2000) ............................................................................................... 26

*Williams v. Martinez*,
  586 F.3d 995 (D.C. Cir. 2009) ............................................................................................... 12

*Williams v. Purdue Pharma Co.*,
  2003 WL 24259557 (D.D.C. Feb. 27, 2003) ......................................................................... 22, 23

*Wilson v. Belin*,
  20 F.3d 644 (5th Cir. 1994) .................................................................................................... 18

*Witte v. Gen. Nutrition Corp.*,
  104 F. Supp. 3d 1 (D.D.C. 2015) ........................................................................................... 21

*Zahn v. Int'l Paper Co.*,
  414 U.S. 291 (1973) ............................................................................................................... 17

*Zuckman v. Monster Beverage Corp.*,
    958 F. Supp. 2d 293 (D.D.C. 2013) ............................................................... 4, 13, 28

**Statutes**

28 U.S.C. § 1332(a) ............................................................................................ 2, 20

28 U.S.C. § 1332(d) ................................................................................................... 5

28 U.S.C. § 1332(d)(1)(A) ....................................................................................... 16

28 U.S.C. § 1332(d)(1)(B) .......................................................................... 5, 6, 8, 21

28 U.S.C. § 1332(d)(1)(D) ....................................................................................... 16

28 U.S.C. § 1332(d)(2) ............................................................................................... 1

28 U.S.C. § 1332(d)(2)(A) ......................................................................................... 4

28 U.S.C. § 1332(d)(5)(B) ......................................................................................... 4

28 U.S.C. § 1332(d)(6) ........................................................................................ 4, 17

28 U.S.C. § 1332(d)(11)(b)(ii)(III) ........................................................................... 8

D.C. Code § 12-301 ................................................................................................. 16

D.C. Code § 28-3905(k)(1)(A) ................................................................................ 20

D.C. Code § 28-3905(k)(1)(C) ..................................................................... 13, 15, 20

D.C. Code § 28-3905(k)(1)(D) .......................................................................... 6, 7, 8

D.C. Code § 28-3905(k)(1)(D)(i) .............................................................................. 7

D.C. Code § 28-3905(k)(1)(D)(ii) ............................................................................. 7

D.C. Code § 28-3905(k)(2)(B) ................................................................................. 26

D.C. Code § 28-3905(k)(l) ......................................................................................... 4

D.C. Code § 28-3905(k)(l)(A) ................................................................................... 7

D.C. Code § 28-3925(k)(1)(D) ................................................................................ 14

**Other Authorities**

151 Cong. Rec. S1157 (daily ed. Feb. 9, 2005) ........................................................ 9

Black's Law Dictionary, "authorize" (8th ed. 2004) ................................................ 6

BLACK'S LAW DICTIONARY, "may" (7th ed. 1999).........................................................6

D.C. Super Ct. R. Civ. P. 23 ....................................................................... *passim*

D.C. Super. Ct. R. Civ. P. 23(a) ...............................................................7, 8

S. Rep. No. 109–14 (2005), U.S. Code Cong. & Admin. News 2005 ...............................4, 9, 17

Senate Judiciary Committee Report, S. Rep. No. 109-14 (2005), *reprinted in* 2005
    U.S.C.C.A.N. 3 ...................................................................................15

14B Wright & Miller, Federal Practice & Procedure § 3702.1 (4th ed. 2020)...........................19

## INTRODUCTION

In its cursory 10-page Motion,[1] Plaintiff Clean Label Project Foundation[2] argues that this case should be remanded to the D.C. Superior Court. Plaintiff is wrong. This Court has original jurisdiction under the Class Action Fairness Act ("CAFA") and the traditional diversity statute.

Under CAFA, Congress stated that this Court "shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which … any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

The requirements for CAFA jurisdiction are satisfied here. Defendants The J. M. Smucker Company and Rowland Coffee Roasters, Inc. have provided a sworn declaration explaining the basis for their estimate that the cost of an injunction exceeds $9,750,000. *See* ECF 1-3, Lust Decl. ¶ 10. Beyond that, the addition of reasonable estimates of attorneys' fees and punitive damages increases the amount in controversy to $11,250,000. *See* ECF 1, Removal at 8–10. Plaintiff is suing

---

[1] Defendants would request the opportunity to file a sur-reply if Plaintiff asserts new arguments in its Reply in support of its Motion to Remand. *See King & Spalding, LLP v. United States Dep't of Health & Human Servs.*, 2020 WL 1695081, at *1 (D.D.C. Apr. 7, 2020) ("If the movant raises arguments for the first time in his reply to the non-movant's opposition, the Court may either ignore those arguments in resolving the motion or provide the non-movant an opportunity to respond to those arguments by granting leave to file a sur-reply.").

[2] Defendants also note that this lawsuit is likely one of the 15 lawsuits referenced in Plaintiff's alleged RICO scheme in which Plaintiff is being sued because it allegedly "[u]se[s] the cover of a not-for-profit entity to contrive a subjective and opaque purity 'grading' system for dietary supplements that eschews the standards set by federal and state regulators but nonetheless purports to protect consumers; … Ha[s] that entity become a 'retail partner' with another entity that is owned and controlled by a purportedly 'independent' laboratory which conducts unspecified tests against unspecified standards; … [and] [u]sing the results of that 'independent laboratory,' award[s] a 'purity certificate; to those entities who pay the demanded fee, but ha[s] the 'retail partner' publish a false 'bad grade' for those whose products are no less pure, *and then demand[s] millions of dollars in exchange for not filing a sham lawsuit claiming the products are 'adulterated,' not 'clean,' or 'impure.'" Pharmavite, LLC v. Clean Label Project Foundation et al.*, 2:20-cv-08001, ECF 1 ¶ 1 (C.D. Cal. Sept. 1, 2020) (emphasis original).

on behalf of a class of more than 100 members because there are more than 100 "D.C. consumers of the Product" at issue. *See* ECF 1-2, Compl. Second ¶ 20.[3] Indeed, Defendants' declaration explains that they sold at least 33,600 units of 10oz Café Bustelo Decaffeinated Coffee (the "Product") in the D.C. area in the three years prior to the Compliant. *See* ECF 1-3, Lust Decl. ¶ 7. In addition, there is complete diversity because Plaintiff is domiciled in Colorado, representing consumers from the District of Columbia, against Defendants who are domiciled in Ohio. *See* ECF 1-2, Compl. at Caption, ¶¶ 40, 41; *see also* ECF 14, Mem. in Support of Mot. to Remand ("Mem.") at 8 ("Plaintiff does not dispute that the parties are diverse.").

Under the traditional diversity statute, Congress vested this Court with original jurisdiction over civil actions when there is "complete diversity," meaning no plaintiff is a citizen of the same State as any defendant, and "the matter in controversy exceeds the sum or value of $75,000." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); 28 U.S.C. § 1332(a).

There is diversity jurisdiction because the parties are citizens of different states, and the amount in controversy exceeds $75,000—be it based on the cost to Defendants of complying with Plaintiff's requested injunctive relief or the attorneys' fees or punitive damages Plaintiff seeks. Plaintiff seeks to reduce the amount in controversy by arguing that it should be divided among the class of District of Columbia consumers on whose behalf Plaintiff purports to sue. But this does not make any sense. Plaintiff cannot claim it is not representing a class of hundreds of consumers

---

[3] After Paragraph 81 of the Complaint, the paragraph numbering restarts with a "second" paragraph one. Thus, references to Complaint's paragraphs after Paragraph 81 are labeled with the term "Second." Additionally, the Complaint served on Defendants in this matter was missing pages and did not include Second Paragraph 20. *See* ECF 1-5, Service of Process at 26–27. Information regarding the missing allegations in the Complaint served upon Defendants are sourced from the Complaint filed with the D.C. superior Court. *See* ECF 1-2. Defendants filed this Removal to protect their rights to federal jurisdiction, and do not waive any objections or concede that they have ever been properly served in this matter. *See* ECF 1, Removal at 1–2 n.1.

(indeed, the "general public") when arguing against CAFA jurisdiction, but then invoke the size of the "general public" as a class it purports to represent as a basis for defeating diversity jurisdiction. Further, the non-aggregation principle that Plaintiff cites is either inapplicable or satisfied when, as here, Defendants' costs of complying with the requested injunction and the amount of punitive damages would be unaffected by the number of plaintiffs seeking relief. Disaggregation is also unwarranted for attorneys' fees when, as here, they are sought only for Plaintiff's benefit. And Defendants' cost of compliance and the recovery of attorneys' fees and punitive damages provide independently sufficient bases to assert diversity jurisdiction.

In sum, this is a straightforward case over which this court should exercise its jurisdiction. A Colorado-based "public interest organization" is suing two Ohio-based corporations, ostensibly on behalf of consumers and the general public of the District of Columbia, to try to secure damages and an injunction worth millions of dollars to change how Defendants' products are labeled and sold across the country. Allowing Plaintiff to avoid federal court just because it says this is not a class action would "exalt form over substance, and run directly counter to CAFA's primary objective: ensuring 'Federal court consideration of interstate cases of national importance.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013). And allowing Plaintiff to avoid this Court by wrenching the non-aggregation principle out of context would undermine the "policy at the very core of the class action mechanism," which is to solve the problem of small recoveries in a solo action "by aggregating the relatively paltry potential recoveries into something worth someone's . . . labor." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (citation omitted).

This is the exact type of case that Congress wanted to be in federal court. This Court should therefore exercise its federal jurisdiction under either CAFA or the traditional diversity statute.

**LEGAL STANDARD**

"'A defendant may properly remove a civil action from a state court when the federal district court has original subject matter jurisdiction.'" *Apton v. Volkswagen Grp. of Am., Inc.*, 233 F. Supp. 3d 4, 10 (D.D.C. 2017) (JACKSON, J.) (citation omitted). This Court has jurisdiction under CAFA, when (1) there is minimal diversity; (2) the class contains at least 100 members; and (3) the amount in controversy is at least $5 million. *See* 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B), (d)(6). "'When the plaintiff makes a motion to remand, the defendant bears the burden of proving federal jurisdiction.'" *Apton*, 233 F. Supp. 3d at 11 (citation omitted). "Absolute certainty as to the amount is not essential; it suffices that there is a present probability that the damages or the right sought to be protected meet the statutory requirement." *Comm. for GI Rights v. Callaway*, 518 F.2d 466, 472 (D.C. Cir. 1975) (quoting *Gomez v. Wilson*, 477 F.2d 411, 420 n.51 (1973)).

"No antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); S. Rep. No. 109–14, p. 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."). Thus, the antiremoval presumption that this Court applied in *Apton* should not be applied here.

**ARGUMENT**

**I.      This Case Is Removable Under CAFA**

Plaintiff argues that "removal [is] not permitted under CAFA's class action provision for actions brought by a private attorney general under D.C. Code § 28-3905(k)(l) where plaintiff has not brought a 'class action' under D.C. Superior Court Rule 23." ECF 13, Mem. at 4 (citing *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 301 (D.D.C. 2013)). This is wrong.

**A.  The text of CAFA and the CPPA confirm that this case is removable under CAFA**

The plain language of CAFA and the D.C. Consumer Protection Procedures Act ("CPPA") confirm that CAFA allows removal of a CPPA action and that this Court has jurisdiction over this type of case.

Plaintiff noticeably pays almost no attention to the text of the CPPA or CAFA. Instead, Plaintiff seems to rest on the assertion that this action is not a class action because it says "CLP filed the above cited action under the D.C. CPPA on behalf of the 'general public' and not under 28 U.S.C. §1332(d)(1)(B)." *Id.* at 3. Not so.

To say that this case is not removable because it wasn't filed under CAFA makes no sense. If the only class actions that could be removed from state court to federal court were ones "filed . . . under 28 U.S.C. §1332(d)(1)(B)," then no class actions would be removable, seeing as state court actions are, unsurprisingly, filed under state law. At the risk of stating the obvious, 28 U.S.C. §1332(d) is a grant of original jurisdiction to the federal courts under which defendants can effectuate removal.

This case is removable because it is a class action as defined by Congress, which defined a "class action" under CAFA as meaning "any civil action filed under rule 23 of the Federal Rules of Civil Procedure *or similar State statute or rule* of judicial procedure *authorizing* an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B) (emphases added); *cf. Song v. Charter Commc'ns Inc.*, 2017 WL1149286, at *1 n.1 (S.D. Cal. Mar. 28, 2017) ("Though [plaintiff] did not style his complaint as a class action," actions brought on behalf of California consumers "resemble a purported class action" and "should be considered class actions" under CAFA). Congress did *not* define a "class action" to mean "a class action suit under Rule 23 of the Federal Rules of Civil Procedure" as Plaintiff contends. *See* ECF 13 at 3.

This result is clear as a matter of statutory interpretation, which, "as [the Supreme Court] always say[s], begins with the text." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citation omitted). After all, a "plain and unambiguous" text, which we have here, "must" be enforced "according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010). Yet, even though the text provides a definition for a "class action," Plaintiff inexplicably seems to contend that it is *Plaintiff's definition* of a class action that controls, as opposed to Congress's. That is misguided.

Looking at the text of CAFA and the CPPA, there is no doubt that the CPPA *authorizes* this case to be brought as a "class action" under CAFA. It is "a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary . . . meaning . . . at the time Congress enacted the statute.'" *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (citation omitted). Under CAFA, a "'class action' means any civil action filed under rule 23 . . . or similar State statute . . . *authorizing* an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B) (emphasis added). And when CAFA was passed, a law that *authorized* something was a law that gave a party legal authority or empowered an action. *See* **Ex. A**, BLACK'S LAW DICTIONARY (8th ed. 2004) ("AUTHORIZE: To give legal authority; *to empower*.") (emphasis added). Thus, under CAFA, the plain language of the CPPA provides plaintiffs with the legal authority to bring a class action because the CPPA states that "a public interest organization *may*, *on behalf of . . . a class of consumers*, bring an action seeking relief . . .." D.C. Code § 28-3905(k)(1)(D) (emphasis added).[4]

The CPPA's text also supports this conclusion, as it plainly authorizes this suit to be brought as a class action under the text of CAFA. The CPPA's whole text confirms that it is a statute that authorizes class actions on behalf of other consumers through a "representative

---

[4] *See* **Ex. B**, BLACK'S LAW DICTIONARY (7th ed. 1999) ("MAY: Is permitted to.").

action"—indeed, Plaintiff admits that the CPPA provides for "*representative suits* and the particularized remedies related to *representative actions*." ECF 13, Mem. at 7 (emphasis added).

Despite Plaintiff's repeated references to the "general public," the Complaint actually states this suit is brought under the provision for representative actions for a class of consumers— Plaintiff seems to just be confused about that fact. After all, Plaintiff states that it is "a public-interest organization pursuant to D.C. Code §28-3905(k)(l)(D) and bring [sic] this action on behalf of members of the general public who could bring the action under D.C. Code 28-3905(k)(l)(A)." ECF 1-2, Compl. Second ¶ 30. But the plain language of D.C. Code § 28-3905(k)(1)(D)(i) only permits an organizational plaintiff to bring a claim on behalf of a specific "consumer" or "class of consumers"—not on behalf of the "general public." The provision Plaintiff is suing under further does not discuss "members of the general public" who could bring an action under subparagraph (A); it discusses whether "the *consumer or class* could bring an action under subparagraph (A)." D.C. Code § 28-3905(k)(1)(D)(i) (emphasis added). And, importantly, the provision Plaintiff is suing under limits the ability to bring such a representative action, by stating that a public interest organization cannot represent other "consumers" or a "class of consumers" unless the organization satisfies the class action requirement of adequacy of representation. D.C. Code § 28-3905(k)(1)(D)(ii) ("an action brought under … this subparagraph shall be dismissed if the court determines that the public interest organization does not have sufficient nexus to the interests involved of the consumer or *class to adequately represent those interests*") (emphasis added).[5] This tracks Superior Court Rule 23, which states that "one or more members of a class may sue or

---

[5] It is unclear how Plaintiff could provide adequate representation to *D.C. consumers* given it is a *Colorado* company defending itself against RICO allegations for conducting a fraudulent shakedown scheme that is allegedly "not in the interest of consumers or in furtherance of the truth regarding the products that [CLPF] reward or punish with their fictitious testing and grading system." *Pharmavite*, 2:20-cv-08001, ECF 1 ¶ 1 (C.D. Cal. Sept. 1, 2020); *see also supra* n.2.

be sued as representative parties . . . ." D.C. Super. Ct. R. Civ. P. 23(a). And the D.C. "Council is presumed to legislate with knowledge of the applicable Civil Rules." *Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, 982 (D.C. 2015) (internal quotation marks omitted).

This is why Plaintiff's argument that this action is a "mass action exception" to CAFA is misplaced. *See* ECF 13, Mem. at 5. While it is true that there is an exception for suits "asserted on behalf of the general public," 28 U.S.C. § 1332(d)(11)(b)(ii)(III), Defendants must again clarify that the provision Plaintiff is suing under definitively does *not* permit actions on behalf of the "general public"; it only permits actions on behalf of "a consumer or a *class of consumers*." D.C. Code § 28-3905(k)(1)(D) (emphasis added). Plaintiff cannot disclaim the plain language of their own Complaint to escape federal jurisdiction. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (judicial estoppel precludes plaintiff from "deliberately changing positions according to the exigencies of the moment," and "playing 'fast and loose with the courts.'") (citations omitted).

In sum, the plain language of CAFA, the CPPA, and Superior Court Rule 23 require a plaintiff to satisfy the Rule 23 class action requirement of adequacy of representation. The Court should read CAFA and the CPPA in harmony because CAFA permits removal of a case brought under statutes like the CPPA, which authorizes one or more representative persons to be represented similar to Rule 23 because there must be adequacy of representation. *Compare* 28 U.S.C. § 1332(d)(1)(B), *with* D.C. Code § 28-3905(k)(1)(D), *and* D.C. Super. Ct. R. Civ. P. 23(a); *see also English v. Trump*, 279 F. Supp. 3d 307, 324 (D.D.C. 2018) ("the harmonious-reading canon" dictates that "'[i]f by any fair course of reasoning the two [statutes] can be reconciled, both shall stand.'" (quoting *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 622 (2011))).[6]

---

[6] *Howard v. Pritzker*, 775 F.3d 430, 437 (D.C. Cir. 2015) ("when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the

**B. The legislative history of CAFA and the CPPA confirm that this case is removable under CAFA**

Not only does Plaintiff largely ignore the text of CAFA and the CPPA, Plaintiff also

egregiously misinterprets the statutory history and legislative intent.[7]

"In passing CAFA, Congress emphasized that the term 'class action' should be defined

broadly" to prevent the very type of "'jurisdictional gamesmanship'" Plaintiff is engaging in here:

> [T]he Committee further notes that the definition of "class action"
> is to be interpreted liberally. Its application should not be confined
> solely to lawsuits that are labeled "class actions" by the named
> plaintiff or the state rulemaking authority. Generally speaking,
> lawsuits that resemble a purported class action should be considered
> class action for the purpose of applying these provisions.

*Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 424 (5th Cir. 2008), *abrogated on*

*other grounds by Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014) (quoting

S. Rep. No. 109–14, at 35 (2005), U.S. Code Cong. & Admin. News 2005, p. 3). "Congress also

considered and rejected an amendment that would have exempted class actions filed by state

attorneys general from removal under CAFA." *Id.* (citing 151 Cong. Rec. S1157, 1163–64 (daily

ed. Feb. 9, 2005), for this statement from Senator HATCH: "At worst, [the amendment] will create

a loophole that some enterprising plaintiffs' lawyers will surely manipulate in order to keep their

lucrative class action lawsuits in State court . . .. If this legislation enables state attorneys general

to keep all class actions in State court, it will not take long for plaintiffs' lawyers to figure out that

all they need to do to avoid the impact of [CAFA] is to persuade a State attorney general to simply

lend the name of his or her office to a private class action."). Thus, Plaintiff is engaging in the very

---

contrary, to regard each as effective." (quoting *J.E.M. Ag Supply, Inc. v. Pioneer Hi–Bred Int'l, Inc.*, 534 U.S. 124, 143–44 (2001))); *Ill. Nat'l Guard v. FLRA*, 854 F.2d 1396, 1405 (D.C. Cir. 1988) ("Faced, as we are, with two conflicting statutes, we must do our best to harmonize them.").

[7] Of course, when "'the text is clear,' the Court 'need not consider . . . extra-textual evidence.'" *Guedes v. ATF*, 356 F. Supp. 3d 109, 142 (D.D.C. 2019) (citation omitted).

conduct Congress sought to prevent.

The CPPA's legislative history is also telling. The D.C. Council spoke separately of actions brought by a "representative of a class of consumers" and actions by "a private attorney general on behalf of the general public" in a list of actions that might be brought under the CPPA. *See* **Ex. C**, D.C. Council Comm. on Public Servs. & Consumer Affairs, Report on Bill 19-0581, the "Consumer Protection Amendment Act of 2012," at 4 (Nov. 28, 2012). The legislative history explains, "New subsection (k)(1)(A) provides a right of action for consumers. It is not intended to alter any right a consumer currently has to bring an action, whether individually, jointly with other consumers, as a private attorney general *on behalf of the general public*, as the *representative of a class of consumers*, or otherwise." *Id.* (emphasis added). And importantly, the legislative history explained that "Subparagraph (D) is not without important limits" because the Council said "an action brought under (D) shall be dismissed *if the court determines that the public interest organization does not have sufficient nexus to the interests involved of the consumer or class to adequately represent those interests*." *Id.* at 6 (emphasis added).

In other words, the D.C. Council emphasized that an "important limit" of the CPPA is that a public interest organization cannot represent other consumers, which Plaintiff is trying to do here, unless it satisfies the Rule 23 class action requirement of adequacy of representation. As discussed above, this is reflected in the text and is a key feature that separates the CPPA from the other private attorney general statutes considered by the various Courts of Appeal.

**C. The D.C. Circuit has said that the decisions of the local D.C. courts are controlling, and the highest D.C. court has held CPPA representative actions must proceed "*within* the Rule 23 framework" and are thus subject to CAFA**

Finally, the D.C. Court of Appeals and local D.C. courts are the controlling authority on whether representative actions under the CPPA are subject to D.C.'s Rule 23, and therefore CAFA. This question has never been settled by the D.C. Circuit, which addressed this issue and stated it

"*is not clear as a matter of District of Columbia law, and the local courts should determine how this action, purported to be a non-class representative action, should proceed.*" *In re U-Haul Int'l, Inc.*, 2009 WL 902414, at *1 (D.C. Cir. Apr. 6, 2009) (emphasis added). Thus, this Court should not ignore the fact that the D.C. Court of Appeals has since said that this action should proceed "*within* the Rule 23 framework." *See Rotunda*, 123 A.3d at 989 (emphasis original).

In *Rotunda*, a plaintiff brought CPPA claims for damages on behalf of himself and the "general public," but, similar to here, the plaintiff disclaimed "any intention to seek class certification" under Superior Court Rule 23. *See id.* at 982. The trial court dismissed the "representative portion" of the plaintiff's CPPA claims "on behalf of the general public" because it said the plaintiff did not "seek class certification under Superior Court Rule of Civil Procedure 23." *Id.* The trial court held that a CPPA claim "brought by an individual on behalf of himself and other similarly situated members of the general public is *in essence a class action*, whether pled as such or not, and must satisfy the requirements of Rule 23." *Id.* (emphasis added).

The D.C. Court of Appeals affirmed and analyzed the text of the CPPA and its legislative history and explained there was "no unambiguous evidence, in the 2000 amendments or the supporting legislative history, that the Council meant to displace the Rule 23 framework in favor of improvised due process and management devices for a whole sub-set of representative actions." *Id.* at 988. The court emphasized that "Rule 23 has been a mainstay of Superior Court civil practice for decades." *Id.* at 988. And as for class actions, the court emphasized that it did not understand the D.C. Council to have "repealed the rule's application to representative suits under the CPPA." *Id.* Importantly, the court so held because "deep uncertainty . . . would beset the effort to regulate CPPA actions on behalf of 'the general public' outside Rule 23's framework," because if representative actions were not governed by Rule 23, it would lead the Court to adopt "an array of

makeshift 'Rule 23–Lite' controls available to the court in exercising its inherent authority" and "tie[] the hands of trial judges for a potentially large array of representative actions." *Id.* at 986, 87. This rationale lines up perfectly with the interpretation of the CPPA from above.

Despite this decision from the D.C. Court of Appeals, Plaintiff argues that this Court should remand this case just because "Th[is] Court has held in numerous cases that the . . . CPPA . . . is a separate and distinct type of action from CAFA and Rule 23." ECF 13, Mem. at 2 (citations omitted). Rather than offering any real analysis, Plaintiff says this Court should remand this case because other district court judges have said so. *Id.* at 3–6.

Plaintiff is mistaken. There is no controlling precedent in this District because the issue has never been settled by the D.C. Circuit, which said "the local courts should determine how this action, purported to be a non-class representative action, should proceed." *In re U-Haul Int'l, Inc.*, 2009 WL 902414, at *1. Plaintiff is wrong to suggest this Court is bound by the decisions of other judges in this District. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'") (citations omitted).

The D.C. Circuit has held that "on questions of District of Columbia law, th[e] court defers to the D.C. Court of Appeals." *Williams v. Martinez*, 586 F.3d 995, 1001 (D.C. Cir. 2009). Thus, under the established precedent of this District, courts should recognize the "deference owed to the D.C. Court of Appeals on matters of D.C. law" and "accord[] considerable persuasive weight to the conclusion of the D.C. Court of Appeals, as the final authority on D.C. law." *Congress v. D.C.*, 324 F. Supp. 3d 164, 173 (D.D.C. 2018) (citation omitted).

Plaintiff apparently does not recognize this. Plaintiff pays lip service to the D.C. Court of Appeals and, apart from one case, relies completely on a line of district court decisions that precede

- 12 -

the D.C. Court of Appeals' decision in *Rotunda*.

Indeed, two of the non-binding cases featured by Plaintiff were decided *before* the D.C. Court of Appeals decided *Rotunda*. *See* ECF 13, Mem. at 3–5 (citing *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 101 (D.D.C. 2008), and *Zuckman*, 958 F. Supp. 2d at 301). But since the D.C. Circuit held that "the local courts should determine how this action, purported to be a non-class representative action, should proceed," *In re U-Haul Int'l, Inc.*, 2009 WL 902414, at *1, those decisions are abrogated by *Rotunda*'s holding that Rule 23 was "the necessary vehicle" for bringing representative actions under the CPPA. *See Rotunda*, 123 A.3d at 982, 989. After all, "[i]nterpretations of state law by a State's highest court are, of course, binding upon" the federal courts. *See California v. Freeman*, 488 U.S. 1311, 1313 (1989)

For the decision after *Rotunda*, Plaintiff cites a single District Court case that is not entitled to any controlling weight: *Animal Legal Def. Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53, 64 (D.D.C. 2017). *See* ECF 13, Mem. at 5. But Plaintiff offers no argument that this case was correctly decided. And the decision in *Animal Legal Def. Fund* incorrectly found that the policy concerns that motivated the decision in *Rotunda* do not extend to claims for injunctive relief. *See Animal Legal Def. Fund*, 249 F. Supp. 3d at 65. Plaintiff further glosses over the fact that the organizational plaintiff in that case brought its action under D.C. Code § 28-3905(k)(1)(C), and not on behalf of a "***class of consumers***" pursuant to subparagraph (D) like Plaintiff here. Finally, Plaintiff does not even address the fact that it is ***not*** asserting a pure claim for injunctive relief but is in fact seeking damages—and punitive damages at that. *See* ECF 1-2, Compl. at Prayer for Relief. Rather than offer any analysis of why this was a correct decision, or how it is applicable to this case, Plaintiff just cursorily argues that *Animal Legal Def. Fund* renders Defendants' arguments "irrelevant and incorrect." ECF 13 at 6. This is incorrect.

- 13 -

Even if the holding in *Animal Legal Def. Fund* could somehow be extended to actions for injunctive *and* monetary relief brought pursuant to D.C. Code § 28-3925(k)(1)(D) (it cannot), this Court should reject this non-binding precedent because *Rotunda*'s logic applies with equal force to claims for injunctive relief. As with the monetary damages that Plaintiff seeks, Plaintiff identifies "no unambiguous evidence, in the 2000 amendments or the supporting legislative history," that the D.C. Council intended to displace Rule 23 for representative actions. *Rotunda* 123 A.3d at 988. As with monetary damages Plaintiff seeks, whether individual plaintiffs "are bound . . . outside of detailed structures regulating class actions like those in Rule 23 … present[s] grave due process concerns." *Id.* at 986. And just like with monetary damages Plaintiff seeks, absent Rule 23, the Court would be forced to adopt "an array of makeshift 'Rule 23–Lite' controls" to manage the case. *Id.* at 987. This is no doubt why Judge SULLIVAN has recognized that the decision in *Rotunda* "h[e]ld[] that Federal Rule of Civil Procedure 23 applies to []CPPA actions under D.C. law." *Alston v. Whole Foods Mkt. Grp.*, 2018 WL 2561041, at *1 (D.D.C. Apr. 13, 2018) (citing *Rotunda*, 123 A.3d at 988). It only makes sense.

Plaintiff refuses to engage in this analysis. Instead, citing no support whatsoever, it claims that "the concerns of *Rotunda* are not present in this case given that this suit does not preclude the rights of members of the public who might later want to assert their own damages because Plaintiff seeks injunctive relief under the CPPA, thus not conferring jurisdiction under CAFA." ECF 13, Mem. at 6. But how can this possibly be true? Is it Plaintiff's position that it can obtain an injunction and millions of dollars in attorneys' fees and punitive damages, and Defendants are still open to liability from individual D.C. residents for the same acts? Is Plaintiff taking the position that it can represent D.C. consumers but not give them notice of any settlement it would reach, for example? That would be quite the anomalous situation. Even more troubling, can the individuals

running CLPF set up another "public interest organization," hire the same attorneys, and bring the same claims for attorneys' fees and punitive damages? Of course not.

The decision in *Animal Legal Def. Fund* does not exist in a vacuum; it has been openly questioned as "debatable" by the jurisdiction whose law it purports to interpret. *See Organic Consumers Ass'n v. General Mills, Inc.*, 2017 WL 2901210, at *4 (D.C. Super. Apr. 27, 2017).[8]

In sum, nothing in CAFA suggests that injunctive relief should be treated any differently than economic damages. CAFA provides no basis to treat claims for injunctive relief differently than claims for damages—and, even if it did, Plaintiff *does* seek damages here so it does not matter. Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 40. The D.C. Court of Appeals has held that CPPA representative actions should proceed "*within* the Rule 23 framework." *Rotunda*, 123 A.3d at 989 (emphasis original). Thus, the CPPA is a statute "similar" to Rule 23, it authorizes class claims, and the Court should exercise its jurisdiction under CAFA here.

---

[8] Plaintiff also fails to appreciate the consequences of its decision to seek relief on behalf of the general public under D.C. Code § 28-3905(k)(1)(C) for products Plaintiff did not purchase. *See* ECF 1-2, Compl. at 2, n1. This is important because, as the same D.C. Superior Court judge explained, under the CPPA, "Plaintiffs can bring this action only on behalf of those who have suffered an alleged injury under the statute." *General Mills*, 2017 WL 2901210, at *5 (emphasis added). Thus, "whether this lawsuit can cover products not purchased by Plaintiffs" is a question about "whether the [CPPA] permits Plaintiffs to represent such consumers*, through a class action or otherwise.*" *Id.* (emphasis added). And the local D.C. courts have said that "*Plaintiffs' ability* to represent the interests of members of the general public and other consumers despite the fact that Plaintiffs did not purchase products identical to those purchased by [] other parties *turns . . . on a question frequently addressed in the context of similar class actions . . ..*" *Id.* (emphases added).

**D. Plaintiff provides no evidence to rebut Defendants' evidence that CAFA's numerosity and amount-in-controversy requirements are satisfied**

Finally, Plaintiff does not credibly rebut that the class of D.C. consumers has more than 100 members or that the cost of an injunction to Defendants exceeds $5 million.

### 1. Defendants have provided the Court with sufficient evidence to conclude that CAFA's numerosity requirement is satisfied

Plaintiff's Complaint states that the class of consumers Plaintiff seeks to represent is all D.C. consumers who ever bought Defendants' Product. Under CAFA, "the term 'class' means all of the class members," which, in turn, "means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(A), (D). In the Complaint, however, Plaintiff says it brings this action on behalf of D.C. consumers who bought Defendants' Product. ECF 1-2, Compl Second ¶ 30. And since Plaintiff fails to identify a temporal scope, Plaintiff has necessarily alleged that it is suing on behalf of *all* consumers within the District that have *ever* bought Defendants' Product.

Given this, Defendants obtained a Declaration on behalf of Smucker from Mr. Lee Lust, who is the Director of Marketing for Café Bustelo at The J. M. Smucker Company. *See* ECF 1-3, Lust Decl. ¶ 2. Mr. Lust's job responsibilities entail, among other things, the marketing of Defendants' Café Bustelo products. *See id.*, ¶ 3. His job responsibilities also include, but are not limited to, oversight over marketing communication and advertising, packaging, innovation, and sales and promotion strategy. *See id.*

Mr. Lust analyzed retail data and stated under oath that Defendants have sold 36,600 units of the Product in the D.C. area in the three years before the Complaint—which, under D.C. Code § 12-301, is the limitations period for Plaintiff's CPPA claims. *See id.* ¶ 7. Given this fact, the number of D.C. consumers who have bought the Products during the limitations period is well over 100. To find otherwise would sanction the gamesmanship Congress sought to end and

"enabl[e] plaintiffs' lawyers who prefer to litigate in state courts to easily 'game the system' and avoid removal of large interstate class actions to federal court." S. Rep. No. 109-14, at 10. In *Standard Fire*, the Supreme Court cited that congressional objective in rejecting a plaintiff's efforts to game CAFA's requirements like Plaintiff is doing here. *See* 568 U.S. at 594; *see also Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 407 (6th Cir. 2008) ("CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction."). Thus, Defendants have satisfied their burden and put forth "evidence for the likely size of the class." *Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 155 (D.D.C. 2007).

### 2. Defendants provided the Court with sufficient evidence to conclude that CAFA's amount-in-controversy requirement is satisfied

Plaintiff also incorrectly argues that the non-aggregation principle applies to calculating the amount in controversy under CAFA and seems to suggest that Defendants have the nonexistent burden of *proving* CAFA jurisdiction.

To dispose quickly of Plaintiff's argument related to the non-aggregation principle under CAFA, it is literally black-letter law that damages are aggregated under CAFA. 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs."); *see also Sloan v. Soul Circus, Inc.*, 2015 WL 9272838, at *9 (D.D.C. Dec. 18, 2015) ("Attorney fees are part of the amount in controversy if they are provided for by statute or contract." (collecting cases)); *Bradford v. George Washington Univ.*, 249 F. Supp. 3d 325, 334 (D.D.C. 2017) (punitive damages considered for CAFA's amount in controversy). The authorities Plaintiff cites in support of the non-aggregation principle's application to class actions are from 1969 and 1973, and thus irrelevant because they predate CAFA. *See* ECF 13 at 9 (citing *Snyder v. Harris*, 394 U.S. 332, 335 (1969) and *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294 (1973)).

With that issue out of the way, Plaintiff's other arguments are equally incorrect, because when a Court determines the amount in controversy, "[a]bsolute certainty as to the amount is not essential; it suffices that there is a present probability that the damages or the right sought to be protected meet the statutory requirement." *Comm. for GI Rights*, 518 F.2d at 472 (quoting *Gomez*, 477 F.2d at 420 n.51). Given Plaintiff's noticeable silence on this point, it is important to remember that "[t]he Supreme Court recently held that the defendant need only 'allege the requisite amount plausibly' and need not support the allegation with evidentiary submissions." *Doe v. Georgetown Synagogue-Kesher Israel Congregation*, 118 F. Supp. 3d 88, 93 (D.D.C. 2015) (quoting *Dart*, 574 U.S. at 83); *see also Beyond Pesticides v. Dr. Pepper Snapple Grp., Inc.*, 322 F. Supp. 3d 119, 121 (D.D.C. 2018) (same). When, as here, Plaintiff contests the allegation in the notice of removal, the proper standard is a preponderance of the evidence. *See Doe*, 118 F. Supp. 3d at 93.

Plaintiff puts forth an insufficient challenge that "Defendant's showing is purely speculative and insufficient at the threshold established by precedent caselaw." ECF 13, Mem. at 10. Yet again, Plaintiff supports this statement with no argument, evidence, or analysis at all. Defendants, on the other hand, support their estimate of the amount in controversy with the sworn declaration of Mr. Lust. *See* ECF 1-3. Based on his wide-ranging experience, a review of Defendants' internal data, and a review of the relief Plaintiff has told Defendants it is seeking,[9]

---

[9] There is a "persuasive body of jurisprudence" in "other federal courts of appeals [that] have found that a plaintiff's settlement demand can be used as evidence of the amount in controversy so long as it reflects a 'reasonable estimate' of the plaintiff's claim." *Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 74–75 (D.D.C. 2014) (collecting cases). *See, e.g.*, *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839–40 (9th Cir. 2002) (settlement letter valuing trademark at $100,000 "is sufficient [evidence] to establish the amount in controversy"); *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006) (settlement offer could be "used . . . to show the stakes, a question independent of the claim's merit."); *McPhail v. Deere & Co.*, 529 F. 3d 947, 956 (10th Cir. 2008); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994); *Wilson v. Belin*, 20 F.3d 644, 651 n.8 (5th Cir. 1994). Here, Mr. Lust based his estimate on the

Mr. Lust determined that changing the labeling and packaging of the products would cost more than $4.8 million, that the reduction of the alleged amount of methylene chloride (if any) to the levels Plaintiff demands would cost more than $3.45 million, and that a public education campaign consistent with Plaintiff's demand, depending on its scope, would cost more than $1.5 million. *See* ECF 1-3, Lust Decl., ¶ 9.[10] As this Court has noted, it can consider the costs to defendants of complying with an injunction to calculate the amount in controversy. *See Pietrangelo v. Refresh Club, Inc.*, 2019 WL 2357379, at *8 (D.D.C. June 4, 2019) (the court can consider "compliance costs—for example, [from] modifying [defendant's] marketing materials, retraining [defendant's] employees, or potentially making physical alterations to [defendant's] facilities") (citing *Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978) for proposition that "in valuing declaratory and injunctive relief for purposes of the amount-in-controversy requirement, courts may look 'to the cost to the defendants to remedy the alleged [legal violation]'").

Plaintiff's cursory one-paragraph criticism of Mr. Lust's Declaration, in which it baldly claims Defendants speculate about the amount in controversy, is insufficient. These conclusory, unsworn gripes by counsel do not give the Court any reason to doubt Mr. Lust's sworn declaration. For this reason alone, Plaintiff's argument must be rejected. Courts across the country, including

---

actual relief Plaintiff has requested after reviewing the settlement letter proffered by Plaintiff. *See* ECF 1-3, Lust Decl. ¶ 8. At worst, Plaintiff's "proposed settlement [] is [only] *relevant evidence* in the amount in controversy." *Nat'l Consumers League v. Flowers Bakeries, LLC.*, 36 F. Supp. 3d 26, 33 (D.D.C. 2014) (citation omitted) (emphasis original). Defendants have, at best, provided concrete evidence of the amount in controversy, or, at worst, put forth relevant evidence. Meanwhile, Plaintiff has put forth nothing.

[10] Defendants do not concede—and in fact deny—that Plaintiff is entitled to any of the relief it seeks. A plaintiff's claim, whether "well or ill-founded in fact," "fixes the right of the defendant to remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938); *accord Griffin v. Coastal Int'l Sec., Inc.*, 2007 WL 1601717, at *2 (D.D.C. June 4, 2007); *see also* 14B Wright & Miller, Federal Practice & Procedure § 3702.1 (4th ed. 2020) ("[A] defendant who seeks to prove that the amount in controversy is greater than the jurisdictional amount does not automatically concede that the jurisdictional amount is recoverable.").

- 19 -

in this District, routinely reject such criticism of declarations when, as here, a plaintiff provides no evidence that the removing party's sworn statement is untrue, provides no data to refute the data relied on, and offers nothing but conclusory statements to oppose the sworn statement. *See, e.g.*, *Bimbo Bakeries*, 46 F. Supp. 3d at 71 (plaintiff does not show declaration was speculative when plaintiff "'offered nothing' to contradict the accuracy of the defendant's sworn affidavit" and "offers only conclusory statements in support of its position that the . . . numbers are speculative.").

## II.      This Case Is Also Removable Based on Traditional Diversity Jurisdiction

In the alternative, if Plaintiff is correct that CAFA does not apply, and "the 'consumer or class of consumers'" language in the CPPA is used to mean D.C. consumers in aggregate, such that Plaintiff is just suing on behalf of "the general public," ECF 13, Mem. at Introduction, then this case is removable under the "traditional" diversity standard because there is complete diversity and the relief sought exceeds $75,000. *See* 28 U.S.C. § 1332(a). Plaintiff cannot have it both ways. Plaintiff cannot claim it is not representing a class of hundreds of consumers (indeed, the general public) when arguing against CAFA jurisdiction, but then invoke the size of the general public as a class it purports to represent as a basis for defeating diversity jurisdiction. If Plaintiff is suing on behalf of the "general public" in aggregate as it claims, then the non-aggregation rule does not apply and the cost of an injunction and punitive damages should not be subject to apportionment given the circumstances of this case.[11]

According to Plaintiff, the non-aggregation principle demands that the amount in

---

[11] Defendants are aware this Court has previously held that the non-aggregation principle applies to representative actions for injunctive relief and attorneys' fees under the CPPA. *See Inst. for Truth in Mktg. v. Total Health Network Corp.*, 321 F. Supp. 3d 76, 91 (D.D.C. 2018) (JACKSON, J.). But the organizational plaintiff in that matter brought its action pursuant to D.C. Code §§ 28-3905(k)(1)(A) & (C), not subsection (D), and the holding is therefore inapposite for the class action analysis in Section I of this Memorandum. Furthermore, in reaching its holding, this Court recognized, "'the D.C. Circuit has not spoken to the application of the non-aggregation principle

controversy be allocated on a pro rata basis among the individuals on whose behalf Plaintiff purportedly sues: a class of District of Columbia consumers for diversity purposes but somehow not for purposes of CAFA. ECF 13, Mem. at 9. Putting aside the gamesmanship, this argument is incorrect for two reasons. *First*, the non-aggregation principle does not apply when, as here, the claims asserted are "common and undivided." *Second*, this principle, even if applicable here, is satisfied because the costs at issue are unaffected by the number of plaintiffs asserting claims.

### A.  Plaintiff's "common and undivided" claims for injunctive relief are not subject to the non-aggregation principle

When a plaintiff seeks injunctive relief, the amount in controversy is "the value of the object of the litigation," *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977), which "may be measured by either the value of the right sought to be gained by the plaintiff . . . or the cost of enforcing that right to the defendant," *Tatum v. Laird*, 444 F.2d 947, 951 (D.C. Cir. 1971), *rev'd on other grounds*, 408 U.S. 1 (1972); *accord Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978). Thus, "[t]he value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant." *GEO Specialty Chems., Inc. v. Husisian*, 951 F. Supp. 2d 32, 39 (D.D.C. 2013).

Here, Plaintiff is seeking injunctive relief in the form of an "Order requiring [Defendants] to provide corrective advertising to the residents of the District of Columbia that restores consumers." ECF 1-2, Compl. at Prayer for Relief. This alone is well in excess of $75,000. As

---

to representative suits," *id.* at 91 (quoting Am. Compl. ¶ 80), and instead relied on non-binding District Court authority, *id.* (citing *Animal Legal Def. Fund*, 249 F. Supp. 3d 60 (D.D.C. 2017); *Breathe DC v. Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d 163, 170–171 (D.D.C. 2017); *Breakman*, 545 F. Supp. 2d at 103–105; *Witte v. Gen. Nutrition Corp.*, 104 F. Supp. 3d 1, 6 (D.D.C. 2015)). Respectfully, and in the event this Court holds Plaintiff's action is not a class action under 28 U.S.C. 1332(d)(1)(B), Defendants would ask this Court to consider that this case is distinct because no aggregation is appropriate where each additional plaintiff adds nothing to the cost of injunctive relief. *See infra* Section II(B).

explained, this demand would cost more than $1.5 million. *See* ECF 1-3, Lust Decl., ¶ 9

While Plaintiff tries to invoke the non-aggregation principle, the non-aggregation principle is subject to an important exception—it does not apply when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder*, 394 U.S. at 335. In evaluating this exception's applicability, courts in this District have applied the "interest distribution test": "a common and undivided claim exists when the adversary of the class has no interest in how the claim is to be distributed among the class members." *Nat'l Welfare Rights Org. v. Weinberger*, 377 F. Supp. 861, 866 (D.D.C. 1974) (citing *Bass v. Rockefeller*, 331 F. Supp. 945, 950 (S.D.N.Y. 1971), *vacated on other grounds*, 464 F.2d 1300 (2d Cir. 1971)); *accord Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48 F. Supp. 2d 37, 41 (D.D.C. 1999) (denying remand and rejecting aggregation in putative class action seeking disgorgement).

Thus, for example, claims for profit disgorgement are "common and undivided" because "the amount of th[e] recovery would not be affected by the number of plaintiffs, nor the values of their individual claims." *Williams v. Purdue Pharma Co.*, 2003 WL 24259557, at *5 (D.D.C. Feb. 27, 2003).

Several courts have held that, in an action for injunctive relief—with no representational claims for individual damages—"there is a common and undivided interest in the injunctive relief" if the "injunctive relief [] will benefit the class as a whole" and the defendant's cost of compliance does not depend on the size of the plaintiff group or the identity of its members. *See, e.g.*, *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 835–836 (E.D. Mich. 1999). Indeed, many cases recognize that representative claims like the one here for injunctive relief are common, integrated claims rather than "separate and distinct," and those cases refuse to apportion the cost of an injunction to the defendant across purportedly absent plaintiffs, and found federal jurisdiction. *See,*

*e.g.*, *Schweinfurth v. Motorola, Inc.*, 2005 WL 2233258, at *3 (N.D. Ohio Sept. 9, 2005); *Hoffman v. Vulcan Materials, Co.*, 19 F. Supp. 2d 475, 483 (M.D.N.C. 1998) (same); *Bass v. Rockefeller*, 331 F. Supp. 945, 951 (S.D.N.Y. 1971*), vacated on other grounds*, 464 F.2d 1300 (2d Cir. 1971); *cf. N.J. Welfare Rights Org. v. Cahill*, 483 F.2d 723, 725 n.2 (3d Cir. 1973) (per curiam) (similar, but for federal question jurisdiction*).

Thus, assuming Plaintiff is correct and there is no CAFA jurisdiction, and the consumers Plaintiff is suing on behalf of are just D.C. consumers in aggregate, then this case is like *Williams* and *Aetna*. Plaintiff would merely be asserting a common and undivided claim for equitable relief on behalf of the "general public." And no member of "the General Public" that Plaintiff would be representing would have any more claim to an injunction "for the benefit of the General Public" than any other member. Indeed, assuming Plaintiff is correct, Plaintiff is not suing on behalf of absent individual plaintiffs with individual claims. It instead pleads it is "acting on behalf of the general public as private attorneys general." ECF 1-2, Compl. ¶ 44.

Given this, the number and identity of the members of the "general public" does not affect the cost of the injunction. *See In re Cardizem CD*, 90 F. Supp. 2d at 835–36; *Schweinfurth*, 2005 WL 2233258, at *3; *Hoffman*, 19 F. Supp. 2d at 483. Nor do Defendants have an interest in distributing the proposed equitable relief—a district-wide injunction—to different members of the "general public." *See Williams*, 2003 WL 24259557, at *5; *Berman v. Narragansett Racing Ass'n*, 414 F.2d 311, 316 (1st Cir. 1969); *Aetna*, 48 F. Supp. 2d at 40–43. Thus, if Plaintiff is right about CAFA and this solely being an action for the general public, then this case falls within those cases seeking relief that benefitted the public as a whole. As a result, Defendants' compliance cost is not subject to apportionment.

**B.  Applying the non-aggregation principle would not defeat diversity jurisdiction**

Even assuming Section 1332(a)'s non-aggregation principle applied to the injunctive relief

at issue, it would not cause the amount in controversy to fall beneath $75,000. The "relevant test" for compliance with this principle is whether "the cost to each defendant of an injunction running in favor of one plaintiff" exceeds $75,000. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006) (quoting *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir. 1997), *abrogated on other grounds by Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998)). The "key" question is whether a defendant could comply with the requested injunctive relief "for an individual [plaintiff]—in which case the value of the injunction to each individual class member is quantifiable and presumably quite small—or if it could comply with the proposed injunction only by undertaking a systemic change . . ., a change that would cost the same whether it was made for just one [plaintiff] or every [plaintiff]." *Id.* In the former case, the amount in controversy must be disaggregated, because the defendant's cost is the sum of the costs of addressing the claims of the individual plaintiffs.

But in the latter case, when the defendant would incur costs beyond $75,000 no matter how many plaintiffs assert claims, disaggregation is unwarranted because aggregation of plaintiffs' claims is unnecessary to reach the amount in controversy in the first instance. *See, e.g.*, *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 898 (10th Cir. 2006); *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 702, 719 (D. Md. 2001); *Katz v. Warner-Lambert Co.*, 9 F. Supp. 2d 363, 364–65 (S.D.N.Y. 1998). In other words, when a defendant's compliance costs are unaffected by the number of claimants, every plaintiff after the first adds nothing to the defendant's costs. In that case, the court may exercise diversity jurisdiction over the first plaintiff's claim, and supplemental jurisdiction over the related claims of the other plaintiffs whose claims contribute less than $75,000 (or, here, $0) to the amount in controversy. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005).

*Synfuel* shows this principle in action. There, plaintiffs sued a package delivery service, alleging that its method for weighing packages and billing customers amounted to an impermissible contractual penalty. *See* 463 F.3d at 648–49. The remedies plaintiffs sought included an injunction requiring defendant to "make changes to its billing practices." *Id.* at 648. Concluding that defendant could satisfy this relief "only by undertaking a systemic change of its weighing and billing procedures, a change that would cost the same whether it was made for just one customer or every customer served by the company," the court held that the action met the amount-in-controversy requirement. *Id.* at 652; *see also Organic Consumers Ass'n v. Hain Celestial Grp., Inc.*, 285 F. Supp. 3d 100, 102 n.2 (D.D.C. 2018); *cf. Tatum*, 444 F.2d at 955 ("[I]t seems likely that if all the relief sought by [plaintiffs] were granted, including enjoining the operation of the Army's civilian intelligence system . . ., the cost to the Army of complying with such a decree might well exceed" the jurisdictional threshold).

Here, Plaintiff does not dispute Mr. Lust's sworn declaration that changing the labeling and packaging of the products would cost more than $4.8 million, that the reduction of the alleged amount of methylene chloride (if any) to the levels Plaintiff demands would cost more than $3.45 million, or that a public education campaign consistent with Plaintiff's demand, depending on its scope, would cost more than $1.5 million, *see* ECF 1-3, Lust Decl., ¶ 9, or that the cost of this relief would change based on the size of the class of District of Columbia consumers on whose behalf Plaintiff ostensibly sues. Instead, Plaintiff cites *Breakman* for the proposition that the cost of an injunction under the CPPA cannot be aggregated. But in *Breakman*, the defendant **conceded** that the costs of the injunction could be traced to individual consumers on whose behalf the suit was brought. The court then held that, "based on [defendant]'s own calculations, the cost running to **each District of Columbia consumer** is $8.99, an amount far below the jurisdictional

requirement." 545 F. Supp. 2d 96, 106 (D.D.C. 2008) (emphases added).

In sum, Defendants would incur costs above the amount in controversy if they were ordered to comply with Plaintiff's requested injunctive relief. Because the cost to Defendants is unaffected by the size of the class of District of Columbia consumers on whose behalf this suit is purportedly brought, the non-aggregation principle does not affect the amount in controversy.

### C.  Attorneys' fees and punitive damages also satisfy the amount in controversy

The award of attorneys' fees and punitive damages Plaintiff seeks for itself independently satisfies the traditional amount-in-controversy requirement. Attorneys' fees authorized under the CPPA are considered when calculating the amount in controversy. *See* D.C. Code § 28-3905(k)(2)(B) (authorizing attorneys' fees); *see also Sloan*, 2015 WL 9272838, at *9 ("Attorney fees are part of the amount in controversy if they are provided for by statute or contract." (collecting cases)). The same for punitive damages. *Bradford*, 249 F. Supp. 3d T 334 (D.D.C. 2017) (punitive damages considered for amount in controversy).

Despite Plaintiff's claim that Defendants' estimate of attorneys' fees and punitive damages is "purely speculative," it ignores that courts in this District hold that "information regarding [damages amounts in] similar . . . cases" can be evidence of the amount in controversy. *Doe*, 118 F. Supp. 3d at 93–94. Although Defendants do not think Plaintiff should ever be entitled to any attorneys' fees, courts have rewarded attorneys' fees in excess of statutory penalties under the CPPA on policy grounds. *See Williams v. First Gov't Mortg. & Inv'rs Corp.*, 225 F.3d 738, 747 (D.C. Cir. 2000). And CPPA actions such as this one require thousands of hours of work by the plaintiff's attorneys, and expenses awarded for CPPA claims can range into the hundreds of thousands (if not millions) of dollars. *See, e.g., Beck v. Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12, 18, 20 (D.D.C. 2014) (awarding $927,707.89 in attorneys' fees and expenses for a CPPA claim); *Williams*, 225 F.3d at 743 (awarding $199,340 in attorneys' fees in a CPPA claim). And

when punitive damages have been awarded under the CPPA, they have ranged in the millions of dollars. *See, e.g.*, *Modern Mgmt. Co. v. Wilson*, 997 A.2d 37, 54 (D.C. 2010) (affirming punitive damages of $2 million, $1.1 million, and $200,000 against various defendants in a CPPA case); *Griffith v. Barnes*, 560 F. Supp. 2d 29, 38 (D.D.C. 2008) (awarding $100,000 in punitive damages in a CPPA case); *Byrd v. Jackson*, 902 A.2d 778, 782 (D.C. 2006) (awarding $296,000 in punitive damages in a CPPA case). Given this history, Smucker estimated that attorneys' fees could total $500,000 and punitive damages could total $1 million, well above the statutory minimum.[12]

Finally, attorneys' fees and punitive damages are not subject to disaggregation. First, as explained, the non-aggregation principle applies when individual plaintiffs' claims must be aggregated to satisfy the amount in controversy. *See Snyder*, 392 U.S. at 335 ("[T]he separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement."). Some courts within this District have observed that "the non-aggregation principle logically should extend to claims of attorneys' fees." *Breakman*, 545 F. Supp. 2d at 107; *see also Animal Legal Def. Fund*, 249 F. Supp. 3d at 62. While that may be so for attorneys' fee awards spread among clients who have retained counsel, the non-aggregation principle has no logical application when, as here, attorneys' fees will be awarded to and benefit only one plaintiff. The same is true for punitive damages. The only beneficiary of the monetary damages would be Plaintiff, as no one else has retained counsel to prosecute this action or incurred costs litigating it.

Second, even if attorneys' fees were somehow attributable to the class of District of Columbia consumers on whose behalf this suit is brought, a pro rata apportionment of fees between Plaintiff and the general public would still be inappropriate. Disaggregating attorneys' fees "between [a named plaintiff] and the general public on a pro rata basis" necessarily

---

[12] *See supra*, n.10.

"underestimate[s] the portion of fees properly attributed to [the plaintiff] in [its] role as the initial plaintiff." *Zuckman*, 958 F. Supp. 2d at 301. This is so, courts have explained, because the lead plaintiff "likely would have still chosen to bring [its] suit even if [it] could assert only individual claims," in which case "the work required of [it]s attorneys would be substantially more than the pro rata portion of the hourly fees." *Id.* Plaintiff's allegations suggest that it likely would have sued even if it could do so only on its own behalf.[13] Plaintiff's costs, therefore, are its own.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's Motion for Remand.

Dated: October 2, 2020                    Respectfully submitted,

                                By:    /s/ Ronald Y. Rothstein_____

                                       Ronald Y. Rothstein (*pro hac vice*)
                                       Sean H. Suber (*pro hac vice*)
                                       Nathan R. Gilbert (*pro hac vice*)
                                       WINSTON & STRAWN, LLP
                                       35 West Wacker Drive
                                       Chicago, IL 60601
                                       Phone: (312) 558-3765
                                       Fax: (312) 558-5700
                                       RRothste@winston.com
                                       SSuber@winston.com
                                       NRGilbert@winston.com

                                       *Attorneys for Defendants*
                                       *The J. M. Smucker Company and*
                                       *Rowland Coffee Roasters, Inc.*

---

[13] Defendants deny that these allegations suffice to establish Plaintiff's standing to sue. *See Bauer v. Marmara*, 774 F.3d 1026, 1029 (D.C. Cir. 2014).